UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

NORMAN J. KAMMERAAD,

      Plaintiff,

v.

MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY,

      Defendant.
_____/

Case No. 1:05-cv-735

HON. GORDON J. QUIST

## OPINION

Plaintiff Norman Kammeraad ("Kammeraad") filed a two count complaint under 42 U.S.C. § 1983 against the Michigan Department of Environmental Quality ("MDEQ"). Count 1 alleges that MDEQ's decision denying his "application for certification as an Underground Storage Tank Professional pursuant to Section 21543 of Part 215 of the Natural Resources and Environmental Protection Act, M.C.L. 324.21543," violated "his right to property" under the Due Process Clause of the Fourteenth Amendment and "his right to fair and equal treatment guaranteed by the Equal Protection Clause of the Fourteenth Amendment." (Pl.'s Compl. ¶¶ 6, 21.) Count 2 alleges that M.C.L. 324.21543 "deprived Plaintiff of notice and opportunity to be heard as to the facts surrounding" the denial of his application, in violation "of his constitutionally protected rights under the United States Constitution." (*Id*. at ¶¶ 33-34.) Now before the Court is MDEQ's motion to dismiss Kammeraad's complaint. MDEQ raises four grounds in support of its motion to dismiss. First, it asserts that Kammeraad's suit is barred by claim preclusion. Second, it maintains that this Court lacks subject matter jurisdiction to entertain the suit pursuant to the *Rooker-Feldman* doctrine. Third, it argues that Kammeraad's § 1983 claim against it must be dismissed for it its not a "person" for purposes of a § 1983 claim. Finally, it argues that Kammeraad's claim against MDEQ is barred

by the Eleventh Amendment. For the following reasons, the Court will grant MDEQ's motion to dismiss.

The court has read the written submissions and finds that oral argument is not necessary for a decision in this case.

## I. Background

On May 16, 2003, Norman Kammeraad filed an application with MDEQ seeking certification as an Underground Storage Tank Professional. On July 22, 2003, MDEQ informed Kammeraad that his application was incomplete. On January 12, 2004, Kammeraad resubmitted his completed application. MDEQ rejected this application on May 21, 2004, citing Kammeraad's inadequate work experience. On June 21, 2004, Kammeraad sent a letter to MDEQ detailing his objections to MDEQ's decision. On July 23, 2004, MDEQ informed Kammeraad of its final agency decision rejecting his "Certified Underground Storage Tank Professional (CP) application." (Def.'s Mot. Dismiss Ex. 1.) Kammeraad then appealed this final agency decision to the Ottawa Circuit Court pursuant to M.C.L. § 600.631. Among other grounds advanced in support of his position that MDEQ's decision denying his application was erroneous, Kammeraad argued that MDEQ's decision violated his "right to substantive and procedural due process," was made upon "unlawful procedure," and was "arbitrary and capricious." (*Id.* Ex 3., Appellant's Br. Appeal at 21, 23, 24, 28.) The circuit court affirmed MDEQ's decision denying Kammeraad's application, concluding that the "decision . . . was within its statutory authority and consistent with Part 215 of the National Resources and Environmental Protection Act," and that, since "[t]he decision was supported by the record," it "was not arbitrary and capricious." (*Id.* at Ex. 4, Opinion and Order, *Kammeraad v. MDEQ*, Ottawa Circuit No. 04-49996-AA, at 10.) Moreover, in its opinion, the court addressed Kammeraad's argument that MDEQ violated his due process rights by failing to hold a hearing on his application

2

prior to issuing its final agency decision. (*Id*. at 5.) While the court recognized that "[t]he Due Process Clause of both the United States and Michigan Constitutions apply when government action deprives a person of a liberty or property interest," the court held that "MDEQ's failure to hold a hearing before issuing its final agency decision was not a violation of . . . [Kammeraad]'s due process rights." (*Id*. at 6.) Finally, the court rejected Kammeraad's argument that MDEQ's decision denying his application violated the United States Constitution because it "eliminated his free exercise of conduct" to inspect and remove underground storage tanks.

## II. Analysis

**A.    Rooker-Feldman Doctrine**[1]

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005), the Supreme Court held that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Moreover, the Court explained, the *Rooker-Feldman* doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id*. at 293, 125 S. Ct. at 1527. Rather, the Court continued, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id*. (quoting *GASH Associates v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

---

[1] While, in its brief, MDEQ first argued that claim preclusion prevents the maintenance of this claim and then argued that this Court lacks subject matter jurisdiction pursuant to the *Rooker/Feldman* doctrine, the court must consider the subject matter jurisdiction challenge first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012 (holding that a court must first assure itself of its jurisdiction to entertain a claim before addressing the merits). If the Court finds that it has subject matter jurisdiction to entertain this claim, then it will proceed to address MDEQ's claim preclusion affirmative defense.

In *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006), the Sixth Circuit noted that the *Exxon* Court reigned in the expansive scope given to the *Rooker-Feldman* doctrine by many of the circuit courts. *Id*. at 391. In applying the doctrine as instructed by *Exxon*, the court reversed the district court's conclusion that the *Rooker-Feldman* doctrine deprived it of subject matter jurisdiction over six of the plaintiff's eight claims. *Id*. at 389. The plaintiff's claims that certain defendants committed fraud, misrepresentations, and abuse of process in a prior state proceeding, and that a Michigan statute was unconstitutional, the court ruled, were not barred by the doctrine. *Id*. at 392. The court noted that in these counts, the plaintiff did "not complain of 'injuries caused by the state court judgments' . . . ; she does not claim that the state court judgments . . . in and of themselves violate the federal Constitution or federal laws, unlike the plaintiffs in *Rooker* and in *Feldman*." *Id*. Rather, the court explained, the plaintiff "asserts *independent claims* that those state court judgments were procured by certain [d]efendants through fraud, misrepresentation, or other improper means, and that a state statute [was unconstitutional]." *Id*. While "these independent claims may deny a legal conclusion of the state court," the court noted, "this fact does not lead to a divestment of subject matter jurisdiction in the federal courts." *Id*. On the other hand, the court concluded, the plaintiff's claim that the state court's "order of receivership in and of itself" was illegal and causes the plaintiff harm, does not allege an independent claim but rather "complain[s] of injuries caused by the state court judgment" and was therefore barred by the *Rooker-Feldman* doctrine. *Id*. at 395. "The inquiry then," the court explained, in differentiating "between a claim that attacks a state court judgment, which is within the scope of the *Rooker-Feldman* doctrine, and an independent claim, over which a district court may assert jurisdiction," is to determine "the source of the injury the plaintiff alleges in the federal complaint." *Id*. at 393. "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, . . . then the plaintiff asserts an independent claim." *Id*.

4

In this case, Kammeraad alleges that MDEQ violated his constitutional rights by denying his application for certification as an underground storage tank professional, and that the statute relied upon by MDEQ in denying his application was unconstitutional. Kammeraad does not complain of an injury rendered by a state court judgment; rather, Kammeraad alleges independent claims, albeit ones that deny legal conclusions reached by a state court. The *Rooker-Feldman* doctrine, therefore, does not deprive this Court of subject matter jurisdiction to entertain these claims.

**B.     Claim Preclusion**

Even though Kammeraad's complaint will not be dismissed on the ground that this Court lacks subject matter jurisdiction, the Court agrees with MDEQ that Kammeraad's claims are barred by the doctrine of claim preclusion. The Supreme Court has explained that "[t]he Full Faith and Credit Act . . . requires . . . federal court[s] to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Exxon Mobil Corp.,* 544 U.S. at 293, 125 S. Ct. at 1527 (quoting *Parson Steel*, *Inc. v. First Alabama Bank.*, 474 U.S. 518, 523 (1986)). In Michigan, claim preclusion bars a second action when "(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Sewell v. Clean Cut Mgmt.,* 463 Mich. 569, 575, 621 N.W.2d 222, 225 (2001) (quoting *Dart v. Dart*, 460 Mich. 573, 586, 597 N.W.2d 82, 88 (1999)). The Michigan Supreme Court has noted that "[t]he preclusion doctrines serve an important function by imposing a state of finality to litigation where the same parties have previously had a full and fair opportunity to adjudicate their claims." *Nummer v. Treasury Dep't*, 448 Mich. 534, 541, 533 N.W.22d 250, 253 (1995). "By putting an end to litigation, the preclusion doctrines eliminate costly repetition, conserve judicial resources, and ease fears of prolonged litigation." *Id*.

The requirements for claim preclusion have been met in this case. First, the action between Kammeraad and MDEQ regarding MDEQ's denial of Kammeraad's application for certification as an Underground Storage Tank Professional was decided on the merits when the Ottawa County Circuit Court, after considering Kammeraad's arguments that MDEQ's decision was contrary to law, affirmed MDEQ's denial of his application. Second, the matter contested here was or could have been resolved in the prior circuit court proceeding. The facts in this case are identical to those in the Ottawa County Circuit Court action. In this case, as in the state court case, Kammeraad argues that MDEQ's decision violated his right to due process. The Ottawa County Circuit Court rejected this argument. Moreover, as in the state court case, Kammeraad argues that M.C.L. 324.21543 deprived him of constitutionally protected rights under the United States Constitution. The Ottawa County Circuit Court also rejected this argument. While Kammeraad did not argue that MDEQ's decision denying his application for certification as an Underground Storage Tank professional violated his right to equal protection under the Fourteenth Amendment, as he does here, this claim is nonetheless precluded because he could have raised it in state court. "Michigan courts have broadly applied the doctrine of . . . [claim preclusion]. They have barred, not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Dart*, 460 Mich. at 586, 597 N.W.2d at 88. Finally, the third element for claim preclusion is met, as the state court case and the case here involve the same parties.

Kammeraad's argument that claim preclusion does not bar the maintenance of his claim is unpersuasive. The issue litigated in state court, Kammeraad contends, "was merely a state court's review of a final, administrative agency decision," not whether his constitutional rights were violated. Kammeraad notes that while he did argue in state circuit court that MDEQ's decision denying his application violated his federal constitutional rights, he now asserts that he was not

6

permitted to raise these additional legal issues to the state circuit court, and that the state circuit court did not have the authority to consider these claims.

Kammeraad appealed MDEQ's decision pursuant to M.C.L. 600.631, which provides that "[a]n appeal shall lie from any order, decision, or opinion of any . . . agency, authorized under the laws of this state to promulgate rules from which an appeal or other judicial review has not otherwise been provided for by law, to the circuit court of the county of which the appellant is a resident . . . ." The Michigan Supreme Court has explained that the scope of judicial review for an appeal proceeding under M.C.L. 600.631 is provided by article 6, § 28 of the Michigan Constitution, which provides:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decision, findings, rulings and orders are authorized by law.

*Viculin v. Dep't of Civil Service*, 386 Mich. 375, 392, 397, 192 N.W.2d 449 (1971). A decision that is not authorized by law is one that "'is in violation of a statute [or constitution], in excess of the . . . authority . . . of the agency, made upon unlawful procedures resulting in material prejudice, or is arbitrary and capricious.'" *Northwestern Nat'l Cas. Co. v. Comm'r of Ins.*, 231 Mich. App. 483, 488, 586 N.W.2d 563, 566 (1998) (quoting *Brandon Sch. Dist. v. MI. Educ. Special Serv. Ass'n*, 191 Mich. App. 257, 263, 477 N.W.2d 138, 141 (1991)) (alteration in original). Kammeraad, therefore, was entitled to argue, and the circuit court was entitled to consider, whether MDEQ's decision denying his application for certification as an Underground Storage Tank Professional violated his rights under the United States Constitution.

**C.      Section 1983 claims may only be brought against a "person"**

42 U.S.C. § 1983 provides that "[e]very *person* who, under color of any [law] . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." (emphasis added). The Court agrees with MDEQ that Kammeraad's § 1983 claim cannot proceed against it because MDEQ is not a "person" for purposes of § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989) (holding that "neither a state nor its officials acting in their official capacities are 'persons' under § 1983"). Kammeraad notes that in his complaint, he alleges that not only Defendant, but "all employees, agents and persons acting on behalf of Defendant," violated his rights. Kammeraad, however, does not name these "employees and agents" in his complaint. Therefore, this action is not brought against them. *See* Fed. R. Civ. P. 10 ("In the complaint the title of the action shall include the names of *all* the parties . . . .") (emphasis added).

**D.      Eleventh Amendment Immunity**

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United states by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court has long held that the Amendment grants a state immunity from suits brought in federal courts by its own citizens or by citizens of another state. *See Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504 (1890). The Court agrees with MDEQ that the Eleventh Amendment precludes Kammeraad from maintaining this claim against it. Kammeraad cites *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003), in support of his position that Eleventh Amendment immunity does not preclude the maintenance of his claim against MDEQ. In *Alkire*, however, the issue was whether an Ohio *county* court was entitled to Eleventh Amendment immunity as an arm-of-the-state. "Because Michigan law

8

has created MDEQ as a principal department within the executive branch of the State of Michigan's government, . . . it is an 'arm of the state' entitled to assert Eleventh Amendment immunity." *Detroit Edison Co. v. Mich. Dep't of Envtl. Quality*, 29 F. Supp. 2d 786, 790 (E.D. Mich. 1998); *see* M.C.L. 324.99903 (creating Michigan Department of Environmental Quality pursuant to executive order and transferring to it duties from the Michigan Department of Natural Resources).

In addition to requesting damages, the Court notes that Kammeraad seeks injunctive relief in the form of an order requiring MDEQ to certify him as an underground storage tank professional. While the Eleventh Amendment does not bar § 1983 actions seeking prospective injunctive relief against individual defendants in their official capacities who have violated the plaintiff's federal rights, *see Ex parte Young*, 209 U.S. 123, 159-60, 28 S. Ct. 441, 453-54 (1908), Kammeraad has not named any individual defendants in his complaint.

### III. Conclusion

Because the Court concludes that claim preclusion bars the maintenance of Kammeraad's claims against MDEQ, that Kammeraad may not maintain a § 1983 claim against MDEQ because MDEQ is not a "person," and that the Eleventh Amendment bars Kammeraad's claim against MDEQ, the Court will grant MDEQ's motion to dismiss Kammeraad's complaint.

An order consistent with this opinion will be entered.


Dated:  September 8, 2006                                              /s/ Gordon J. Quist
                                                                                                                                   GORDON J. QUIST
                                                                                                                          UNITED STATES DISTRICT JUDGE